Good morning ladies and gentlemen. Judges Forrest and I welcome our colleague Judge Richard Seaborg, Chief Judge of the Northern District, who is joining us today sitting on assignment. Thank you for joining us, Judge Seaborg. Thank you very much. Just a few housekeeping matters before we start. For all of you that are arguing cases today, I will call the case in the order that they're listed on the calendar. By your case, there is a time designation. Expect to be kept to your designation. If you are the appellant, for example, if each side has 15 minutes, the 15 minutes includes any time that you wish to reserve for rebuttal. You are charged with keeping track of the time. However, when you approach the podium, if you wish to reserve time, if you state that, I will attempt to remind you when you get to that amount of time. The clock does count down and then when it goes up, it doesn't mean that I gave you extra time. It means you've moved into overtime and you're in a situation where I will say that your time has expired. From the standpoint, I know that everyone here is very excited for oral argument and you came and you have things that you want to say, but also realize that we consider oral argument our time and we will have questions for you and the point is that we have to decide the case so we need to have all of our questions answered. You can expect to be kept to your time. However, if any of the judges are asking you any questions, please continue to answer the question. You don't have to ask permission to continue and as to my colleagues, if you have additional questions, you don't need to ask for permission to go into overtime. I want you to have all of your questions answered. So, that being said, I will call the first matter that is on calendar as well. We will take a short break before the last case being argued. So, the first matter on calendar is City of Los Angeles AIHM Hotel Motel Association versus City of Los Angeles. Cases 19-56399, 19-56430 and each side has 10 minutes. So, we are ready to hear from the appellant. Good morning. This is Frank Weiser on behalf of the plaintiffs and appellants in the consolidated matters. I do want to inform the court that I know there was a FRAP 28J letter that was filed by Mr. Eisenman a while back regarding the HOTOP case that was published back in December. You didn't respond to that, I don't think. Did you? No, I did not. Okay. But I do want to indicate to the court that I am filing a cert petition today. There's 150 days as the Supreme Court has extended the time because of the pandemic and I am filing today, I believe our last day is Monday. So, I've completed that. I do want to say very quickly as far as very, very short synopsis of the argument. I respectfully disagreed with the decision, of course. Let me ask you this, Mr. Weiser. So, I'm glad that you advise us of that status, but I also want to, since you didn't respond to this, doesn't HOTOP, if it stands, control here after the opinion came out, the city of L.A. filed that 28J letter and so, if they don't grant cert and it's not revisited, we're bound by HOTOP, obviously, and doesn't that control here? No, I don't believe so, Your Honor. I think there is one distinctive difference with regards to the facts of HOTOP versus this case and that is that in HOTOP, number one, just procedurally was different. It was a 12B6 motion. I stood on the complaint after Judge Koh had given me leave to amend. In this case, it was a motion of judgment on the pleadings and Judge G didn't even consider whether there would be a right to amend. That's number one. And number two, in this case, outside of the Fourth Amendment claim, I believe at the time that Judge G made her ruling, the takings claim, there was no right. Nick had not yet been decided, but Nick was decided afterwards. So, if there was a right to leave to amend, that would, at least, we have the right to bring back the claim to at least attempt a state of takings claim. That's number one. Number two, and I think more centrally, obviously, on the Fourth Amendment issue, the difference there is that in HOTOP, there was a provision under the municipal code that allowed for a fair standard of living. A standard of return above the return that was allowed by the city of 5%. And Judge Watford indicated that there was an overlap between the documents that had been produced in that kind of a petition and what we were challenging in our complaint. And because of that, there was no reasonable expectation of privacy to the records. Here, there is no such provision. This acts more like a licensing provision. And I didn't see anything in the record. I don't believe there's anything in the record that shows that the hoteliers and the apartment owners provide, in other situations, the same type of records. Mr. Weiser, if I could ask you, the briefing indicates, though, that the information that is being sought is more or less the same kind of information that one would find in advertisements for the rental space and the like. So even though there may not be any overlapping regulation that would solicit the same information, here, isn't it pretty clear that the information being sought is really very similar to what is otherwise publicly out there? Well, I disagree, Your Honor. I respectfully disagree. I don't think rent rolls are necessarily equated with what an apartment owner would put up on a website as to what they wanted to rent an apartment for. But what the city is asking for is, I think, a little bit different. They're asking for the actual rents that are being charged. And that is not necessarily equatable to what an apartment owner would voluntarily disclose to the public about how they wanted to rent it. Isn't the amount of rent for an apartment something that's generally publicly disseminated? When you're seeking to rent an apartment, you would be telling people how much the rent is. Well, you know, I will tell you, one of the cases that we have here, which is the, I believe, the hoteliers, which is different than the apartment owners, there is a struggle going on and I'm representing where there is a debate about the conversion of motels to residential hotels. And so the rents are disparate between what the hoteliers might be charging on a transient basis versus what they would be charging on a residential basis. So I think that there would be a great incentive to keep that private and not to disclose that to the city while that challenge is going on. So I don't agree that there's necessarily, it's absolutely equatable. I don't know utility payments, if that is something that one would just disclose to the public. Let me ask you this. Privacy issues aside, was there even a search here? There was no request for inspection or production of documents as I review the record. Correct. If the court is indicating whether this is a facial challenge, this is a facial challenge that's being made to the ordinance on the face of the ordinance, similar to what Patel did. And to that effect, I would like to indicate, and I know once again, if you're bound by HOTOP, this is not going to make a difference. But the argument I am making is a very simple one. As far as the majority opinion and HOTOP that was offered by Judge Watford, who of course sat on the en banc and authored the opinion as Judge Callahan knows in the Patel case that I argued for the circuit. In Judge Watford's tying the privacy issue to the property prong of the Fourth Amendment, the trespass issue, directly I believe goes against both this circuit's case authority and long-standing U.S. Supreme Court case authority. In a case that I cited in my petition for en banc review in the HOTOP case with LaVon versus City of Los Angeles, I believe Judge Callahan sat on that panel, 693 after 1022, and it was explained at least by the majority that property issues under the Fourth Amendment are wholly distinct from privacy issues. One does not have to have a privacy right for the purposes of the trespass test for the functional equivalent. So to that effect, I totally agree with Judge Bennett. Where I disagree with Judge Bennett is, and I had argued before in the HOTOP case and as the panel knows in this case, that you don't have to have a physical trespass as Judge Gee said in the district court. You could have a constructive trespass or a constructive search, and that's what Judge Bennett pointed out. However, where I differ, of course, with Judge Bennett is the idea that it doesn't become a search because somehow an ordinance requesting documents is not equivalent to a court order or a subpoena. And the difference there is, I think, the C versus Seattle case that I cited in the opening brief in this case, and I cited it also in the other one at page 17 and 18. C versus Seattle very clearly says, and that was decided way before Patel in 1967 when the Supreme Court extended the right to administrative inspections with a warrant to commercial premises. It equated it to administrative subpoenas, and it said specifically, even if the documents are required by statute or it's contemplated by statute, the subpoena is required to put some limit on the discretion of the government. Otherwise, it would be unlimited discretion. The government could do by ordinance what it could not do otherwise. And Judge Bennett said so. He said that in Patel, if they had done it by ordinance, he didn't believe it would be a search so they could get the same information. And he said he didn't. It wouldn't matter whether it was a reasonable expectation of privacy, whether it was subject to criminal prosecution, the government could get the records. It's not a search. That is an amazing proposition. And it seems to me that there would be no limit on the government. And so I think there is case law that supports it. Judge Bennett said there was no case law, but I believe the C case is otherwise. And I believe it is a constructive search. Mr. Weiser, you're getting close to a minute. Do you want to reserve any time for rebuttal? Yes, I do. Yes. Okay. Thank you. All right. We'll hear from the respondent. Thank you, Judge Callahan. I may have pleased the court. I think there's little reason for this court to do anything in this case except cite to its opinion in Hotel versus the city of San Jose. It's the same issues based on essentially the same appellants brief that was filed in this case. Let me ask you this, though. Can we really apply HOTOP? In San Jose specifically noted other regulations asking for the same information and since those regulations were uncontested, the panel found there was no reasonable expectation of privacy in the information requested. So here you rely on your rent ad argument and do not cite other regulations asking for the same information. So is it really that simple? I think it is, Judge Callahan. Two reasons. One, I think the rent ad example is sufficient to cover the point. The information here is totally innocuous in any context. So it doesn't matter if the city had sought it by other regulation. But in fact, if you look at Judge G's orders in both the AIHM case and the AGLA case, she cites other portions of the LA Municipal Code that request the same information for similar reasons that the city of San Jose would. So if you're looking to, for example, adjust your rent over what the controlled rent is, you would have to submit the same kind of information, even more extensive information. So I don't think that in that in that sense, there's anything to distinguish this case from HOTOP. In fact, I would go so far as to say that after HOTOP, pursuing these appeals to our argument became frivolous. It really controls these cases. It's hard to see how it does. I know that there's a number of them, but I guess from your your colleague on the other side has said that he's filed a petition for cert. Should this court wait at least to see whether that's granted or not? He said he intends to file one. I don't think he said he's filed it yet. I mean, there are things to say about someone's intentions. You could wait, I suppose, to decide the case. I think it's unlikely that it'll be granted personally. But putting that aside, I don't know that there's any rule that requires a court to wait for someone to seek cert to resolve a case that's resolved squarely by the court's own authority already. Well, there isn't a rule. But sometimes if we know that if something, you know, I'm not I'm not quite as confident as what you're saying that the Supreme Court would have no interest in this type of case. But but then I'm not I'm not saying I have 100 percent that that I'm batting a thousand on predicting what the Supreme Court will take. So what about let's say there is an administrative search here that requires pre-compliance review. Is that is the the internal review here sufficient? I think it is. My friend in his briefing said that Patel requires judicial review. And that's just not true. The Supreme Court in Patel indicated an administrative law judge would be sufficient and then cited to a bunch of examples of federal agencies in which you're talking about an internal review within the executive agency, which you have here. But beyond that, and I haven't heard from my friend otherwise, it seems to me that the result of that review would be subject to administrative mandamus in the state courts under civil code, codicil procedure 1094.5. So he would get his judicial review then and now before there was any kind of enforcement. Mr. Eisenman, can you clarify for me that the in the Hotop decision, as we've already alluded to, that there's a concurrence by Judge Bennett and he says there's just no search there to start with. And then the decision, though, goes and analyzes expectation of privacy and jumps off from the notion that there perhaps was a search. What what is your position? Are you embracing the Judge Bennett concurrence or are you suggesting we should follow the panel opinion? I don't think it's necessary for the purpose of deciding this case to one way or the other, I guess, look at whether you should embrace Judge Bennett's concurrence or the panel opinion. I think both things are probably true. I can see there's some, I suppose, jurisprudential tension or some difficulty in deciding, well, what might constitute a search if you don't have to actually take someone's documents, which no one's doing here. And I should be clear about that because I think my friend likes to say the city's taking the records. The city's not taking anything. They're asking landlords to file a form. So there could be some tension, I suppose, if you wanted to say that the disclosure of information, private or not, does it constitute a search? I mean, I guess that's the question Judge Bennett was trying to answer. I don't think you have to reach that question here. Maybe it's a bit of a chicken and egg between Judges Bennett and the author of the per curiam, I'll assume Judge Watford, about which you decide first, the reasonable expectation of privacy or whether a search is conducted. In this case, I don't think it matters. You could decide that there was no search conducted because there was no search conducted. Or you could say that the material that was obtained is not private, either under any objective sense or really under the subjective sense here. I don't think the landlords could credibly say that they had a subjective expectation in the privacy of any of this information. If the panel doesn't have any further questions, I'm prepared to submit on the briefing. As I said, I think HOTOP controls this case squarely. Do either of my colleagues have any other questions? I just have one more question. Could you, going one step deeper on this notion of what's publicly in the marketplace by virtue of the advertisements for rental space, and your colleague suggested, well, there were certain aspects of the information that's being sought by the municipality here that really does go into areas that wouldn't be in the advertisement. You know, publicly available material. You want to just respond to that? I mean, and also how related to that, the nature of the record in the district court, is it clear that the advertisements to which there's reference really covers the terrain of the information being sought here? It's true that the district court record didn't contain that advertisement, but I think it's a traditionally noticeable fact, the kind of things that one puts in a for-rent ad. The district court record did contain the form that the city uses to elicit that information, which matches up pretty well with any kind of for-rent ad I've ever seen. I suppose the distinction would be there is a section on there that requests, if the landlord is seeking an exemption from rent stabilization ordinance, the reason for the exemption. I don't know that that would be something that you would otherwise publish, but then again, I can't understand how you would ask the city to provide you an exemption from something without telling it why you wanted the exemption or what the exemption was that you were requesting. Otherwise, it asks for the current rent and I think the last previous rent. Maybe you can make an argument that the last previous rent wasn't public, but then again, these things are adjusted on a percentage basis from year to year. If someone wanted to investigate that, you could find the last time the unit was rented and find what the for-rent price was then. It's, again, nothing that strikes me as very sensitive. The other argument I heard from Mr. Weiser this morning had something to do with a different case of his. It's something that hoteliers are planning to do in those cases. I am unfamiliar with those cases. There's certainly nothing in the record about them. Those arguments weren't made in this briefing, so I don't know where to go with that. I hope that answers your question. All right, there don't appear to be additional questions. Thank you. All right, Mr. Weiser, you have one minute and four seconds. Yes, just very briefly, Your Honor. With respect to the issue of what would be what Judge Gee, what's indicated in other portions of the ordinance. I don't recall seeing that, but be that as it may, I argued in my petition for rehearing, rehearing en banc. And a second question I've presented now, and we will be filing it today before the Supreme Court, is whether there's a required records exception for business records under the Fourth Amendment. And very basically, there is none that I know of. I cited out-of-circuit authority. And in fact, even the en banc panel in Patel assumed that, based on what I had argued before the panel in Patel, that just because the government requires you to produce records, doesn't all of a sudden convert your records from private records to public records. So to the extent that both HOTOP and the opinion by Judge Gee seems to assume that because the government is asking in another section that you produce similar records, that that now makes it public. I don't think that applies, and I think there's good out-of-circuit case authority. And once again, if that were the case, then the government could eviscerate any Fourth Amendment rights simply by requiring it by ordinance. So we get into, once again, the question about the limitations on the government. The last thing is that what is being asked in Patel in the HOTOP case is not only necessarily for plenary review, but just because of the fact that I think the case law was pretty clear before that decision, that the privacy interests are totally separate from the property interests under the Fourth Amendment. Given that that was what the majority relied upon, I would be happy for a per curiam reversal by the Supreme Court. Sometimes they do that, even without plenary review. With that, I would submit. All right. Thank you, Mr. Weiser, and thank you, Mr. Eisenman. This matter is submitted.
judges: Callahan, Forrest, Seeborg